### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### JONESBORO DIVISION

**SHAWONDA PARKER**
**o/b/o A.N.J.**                                                                    **PLAINTIFF**

**v.**                                    **No. 3:16-CV-00279-JLH-BD**

**NANCY A. BERRYHILL, Acting Commissioner,**
**Social Security Administration**                                        **DEFENDANT**

### RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following Recommended Disposition ("Recommendation") has been sent to

Judge Leon Holmes.  Parties may file written objections to all or part of this

Recommendation.  Objections must specifically explain the factual and legal bases for

your objection and must be filed within fourteen days of this Recommendation.  By not

objecting, parties may waive the right to appeal questions of fact.

### REASONING FOR RECOMMENDED DISPOSITION

Plaintiff Shawonda Parker filed an application for benefits on behalf of A.N.J., a

child under the age of 18, with an alleged disability onset date of February 7, 2013.  (R. at

43).  The administrative law judge (ALJ) held a hearing, after which he denied the

application.  (R. at 23).  The Appeals Council denied review.  (R. at 4).  Ms. Parker,

A.N.J.'s mother, filed this case on A.N.J.'s behalf, seeking judicial review.

I.       **The Commissioner's Decision**

The ALJ found that A.N.J. had the following severe impairments: oppositional

defiant disorder (ODD) and attention deficit hyperactivity disorder (ADHD).  (R. at 16).

The ALJ found, however, that A.N.J.'s impairments did not meet or medically equal the severity of any listed impairment. (R. at 16). After considering the entire record, the ALJ further found that A.N.J.'s impairments did not functionally equal the severity of the listings. (R. at 16). Consequently, the ALJ held that A.N.J. was not disabled. (R. at 23).

## II.    Discussion

The Court reviews the record to determine whether substantial evidence on the record as a whole supports the Commissioner's findings. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). In this context, "substantial evidence" means "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted).

When determining whether a minor child's impairments functionally equal the listings, an ALJ assesses the child's functioning in six domains: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for self; and 6) health and physical well-being. 20 C.F.R. § 416.926a. To be deemed functionally equal to a listing, the minor child must have marked limitations in two domains or extreme limitations in one domain. *Id.*

Ms. Parker maintains that the ALJ erred in assessing A.N.J.'s functioning in the domains of acquiring and using information and interacting and relating with others. She also argues that the ALJ erred in finding that A.N.J.'s impairments did not meet the criteria for listings 112.08 and 112.11.

To meet a listing, the claimant must meet all of the criteria for that listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Ms. Parker contends that A.N.J. met the B criteria for listings 112.08 and 112.11 because she had marked limitations in understanding, remembering, or applying information and in interacting with others– limitations that would satisfy both listings. Ms. Parker relies on the same evidence and arguments for proving that A.N.J. had marked limitations for each listing and in the domains considered for functional equivalence. The substantive arguments apply with equal force to Ms. Parker's functional-equivalence argument and her arguments that A.N.J. met listings 112.08 and 112.11.

### a. Acquiring and Understanding Information

Ms. Parker contends that A.N.J. has marked limitations in her ability to acquire and use information. She relies primarily on a teacher's assessment from October of 2013, in which A.N.J.'s teacher identified six of ten activities in the domain of acquiring and using information that the teacher believed A.N.J. had a "serious" or "very serious" problem. (R. at 615). The teacher opined that A.N.J. had an "obvious" problem in each of the other four activities listed. (R. at 615). She also noted that A.N.J. scored in the borderline range for nonverbal reasoning skills at a July 21, 2009 mental diagnostic evaluation. (R. at 214, 217). Ms. Parker also argues that A.N.J. was noted to have 2 of 13 reading skills present, 10 emerging, and 1 not present in a May 2013 annual review. (R. at 541).

Ms. Parker also challenges the ALJ's conclusion that A.N.J. did not have marked limitations based on the fact that she made the honor roll at school. (R. at 19). In

support, she quotes a California district court noting that a claimant's "deceptively high academic marks" were the result of additional aid the child received. *Douglas v. Astrue*, No. CV 07-3284 MAN, 2009 WL 330961, at *6 (C.D. Cal. Feb. 10, 2009). The claimant in *Douglas* was in a special program with smaller class sizes and the same teacher from year-to-year; had testing accommodations; was graded on a curve with a chance for re-grading; and had additional assistance at home. *Id.*

A.N.J. did not received the same degree of aid as the claimant in *Douglas*. A.N.J. received 40 minutes of daily instruction in reading, but spent over 80% of her time in general education. (R. at 542). She did receive accommodations for testing, including small-group testing and extended time, but this is not the same dramatic accommodation that the student received in the *Douglas* case.

Reports show that A.N.J. not only made the honor roll at her school, but also that her mother reported to A.N.J.'s treating physician, James Moseley, M.D., that A.N.J. had improved with medication. (R. at 633). Ms. Parker stated in November of 2013 that A.N.J. had no difficulty with behavior or distractibility at school. (R. at 663). In January 2014, she also reported that A.N.J. was doing well academically but had trouble sleeping. (R. at 671). Notably, she reported that additional stressors during that time had significantly troubled A.N.J. (R. at 671). Furthermore, A.N.J.'s pediatrician, David Goodman, M.D., opined in October of 2013 and in January of 2014, that A.N.J. did not have a learning disability and that she could engage in age-appropriate activities without restriction. (R. at 606, 676).

The ALJ weighed all of this evidence in making the determination and gave some weight to both the teacher's assessment and to Dr. Goodman's opinions.  Ultimately, the ALJ found that A.N.J. was not as limited as the teacher described, yet had some limitations, contrary to Dr. Goodman's opinion.  (R. at 17–18).  The record as a whole supports the ALJ's opinion that A.N.J. did not have marked limitations in acquiring and understanding information.  Her mental health records reflect that A.N.J. indeed had some difficulties, but that these difficulties were manageable with medication and did not rise to the level of marked limitations.

  b. Interacting and Relating with Others

Ms. Parker also argues that the ALJ should have found that A.N.J. had marked limitations in interacting and relating with others because he found her ODD to be a severe impairment.  The same assessment that Ms. Parker relies on as showing marked limitation in acquiring and understanding information in fact shows only a few, slight problems in interacting with others.  (R. at 617).  Furthermore, the teacher reported that she could understand almost all of A.N.J.'s speech.  (R. at 618).

In a child function report from October 2013, Ms. Parker reported that A.N.J. had friends her age, was able to make new friends, and generally got along with adults and teachers.  (R. at 138). The only difficulty she noted was that A.N.J. did not play team sports.  (R. at 138).  Ms. Parker points to documentation that A.N.J. had inadequate socials skills; was non-compliant with rules and aggressive toward others; had conflicts with peers; and difficulty following directions.   (R. at 292, 295)  These reports, however, are from 2010, well before the alleged onset date of February 7, 2013.

Ms. Parker also refers to 2010 documentation of A.N.J.'s disciplinary problems in school. (R. at 320–30). These difficulties prior to the alleged onset date, however, are not substantial enough to overcome the more contemporary evidence suggesting that A.N.J. had little-to-no difficulty interacting with others. A.N.J. was diagnosed with ODD, but substantial evidence supports the ALJ's finding that her limitations were not marked. A diagnosis, standing alone, does not direct a finding of marked limitations.

Overall, Ms. Parker has not shown that A.N.J. has marked limitations in acquiring and understanding information or interacting and relating with others. A.N.J.'s difficulties satisfy neither the requirements of functional equivalence nor of listings 112.08 and 112.11.

## III.    Recommended Disposition

The ALJ's decision is supported by substantial evidence on the record as a whole and is not based on legal error. Therefore, the Commissioner's decision denying benefits should be affirmed and the case dismissed.

DATED this 20th day of March, 2017.

_____
UNITED STATES MAGISTRATE JUDGE